# Kutz's Appeal.

1. What evidence is sufficient to show that the assignment of a legacy, absolute on its face, was in reality as collateral security for an antecedent debt.

2. Where there is direct evidence that such was the character of the assignment, previous and subsequent declarations of the assignee in reference thereto, made to third parties, are admissible as corroborative evidence.

3. The finding of facts by a master, sanctioned by the approval of the court below, will not be set aside, as a general rule, where the evidence is conflicting, even though the merits may appear to be contrary to the finding. Where the questions decided, however, grow out of inferences from clearly proved facts or conclusions derived from reasoning, the report has not the same weight.

March 2d 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from the Court of Common Pleas of *Berks county:* In Equity. Of January Term 1882, No 94.

Appeal of George J. Kutz, administrator of De Walt Kutz, deceased, from a decree of said court, dismissing his exceptions to the report of a Master, confirming the report, and dismissing his bill.

The bill in equity, filed by said George J. Kutz, administrator of DeWalt Kutz, deceased, against Polly Kieffer et al., next of kin of Abraham Kieffer deceased, averred, in substance that DeWalt Kutz, in his lifetime, being indebted to said Abraham Kieffer, now deceased, in the sum of $10,000 for which he had given judgment, at the request of Abraham Kieffer for additional security, assigned to him his interest in a legacy of $4,400, under the will of his father, which was vested in him, payable

at the death of his mother, who was then living; that said assignment of the legacy, though absolute on its face, was intended by both De Walt Kutz and Abraham Kieffer to be as collateral security only for the payment of said indebtedness; and was without other consideration; that De Walt Kutz died without having paid said indebtedness, and Abraham Kieffer afterwards died intestate, leaving to survive him the defendants, as his next of kin, who, by agreement, settled and divided his estate among them without taking out letters of administration; and that the complainant, as administrator of DeWalt Kutz, has since paid to defendants the entire amount of prinicipal and interest of said indebtedness due by Kutz to Kieffer. The bill prayed that the defendants be directed to reassign the said legacy of $4,400 to the complainant as administrator, &c.

The said assignment of legacy from Kutz to Kieffer recited a consideration of $3,120.

The defendants in their answer admitted the averments of the bill, except that the said legacy was assigned as collateral security, and averred that " the said Abraham Kieffer purchased the said legacy and paid the money therefor, and that the said purchase and payment of money was in no way connected with nor on account of any previous indebtedness of the said Kutz to the said Abraham Kieffer, and that the said assignment was not intended to be collateral, but was an absolute transfer of said Kutz's legacy to said Kieffer."

The cause was referred to a Master (Garrett B. Stevens, Esq.) to take testimony and report a decree. The Master reported that upon the testimony he did not decide whether the said assignment of the legacy was or was not as collateral, but, in his opinion, the proof offered was not sufficient to induce a court of equity to set aside the written absolute conveyance. He therefore recommended a decree dismissing the bill at the cost of the complainant.

The material portions of the evidence upon which the Master based his finding is set forth in the opinion of this court.

Exceptions filed by the complainant to the Master's report were dismissed by the court, the report confirmed, and the decree recommended by the master dismissing the bill was entered as the decree of the court. The complainant thereupon took this appeal, assigning as error the said decree.

*Frank R. Schell* (*H. H. Schwartz* with him), for the appellant.

*Jeff. Snyder* (with him *Geo. F. Baer* and *M. L. Montgomery*), for the appellees.

Mr. Justice TRUNKEY· delivered the opinion of the court, April 17th 1882.

The parties agree that De Walt S. Kutz became indebted to Abraham Kieffer in the sum of ten thousand dollars and interest thereon; that Kieffer became alarmed and apprehensive that the debt was not sufficiently secured; that Kutz on April 29th 1873, executed an assignment of the legacy to Kieffer; and that the full amount of said indebtedness has been paid. They disagree as to the character of the assignment, one averring that it was collateral security for the indebtedness, the other, that it was absolute for a consideration paid in money: and here is the issue.

The assignment was written by William Schmel, in the office, and under the direction of A. B. Wanner, Esq., and attested by A. B. Wanner and Washington Richards. It in no way appears that any other similar paper was executed between these parties, or that Kutz owed anything else to Kieffer than the judgments set forth in the bill. Outside the assignment itself, there is not a particle of evidence that Kieffer paid any money for it. The defendants offered no testimony, and the inquiry is, whether the plaintiff established his averment by sufficient proof.

A. B. Wanner testifies that Kutz and Kieffer came into his office and asked him to make this assignment, it was drawn and executed, no money was paid at the time, and his recollection is, "the assignment of this legacy was made for the purpose of securing Kieffer for what arrearages of interest, &c., that De Walt owed him, and that Mr. Kieffer said at the time that if De Walt Kutz would pay him what he owed him, then this money was to come back to him again, but if he did not all that was in arrears was to be deducted from it." . . . . "Kieffer was the one who said the assignment was to be collateral. This was all said in the presence of De Walt Kutz and he did not dissent."

Valentine Kieffer says that about the middle of April, 1873, he took Kieffer over to Kutz's and on the way asked him what he was going for: "He said he had a judgment against Kutz for money loaned, and he was afraid it would not reach. He said DeWalt had an inheritance to get after his mother's death, which he was to assign to him as collateral security for the payment of the judgment." In answer to a question he said that De Walt Kutz was willing to make the assignment. "He told me further in answer to my question, supposing DeWalt's estate would reach to pay this off, what would you do with this, that then he would give it back to him."

Joel Hoch testifies of conversations with Kieffer before the making of the assignment when he was considering whether he would purchase the legacy or take it as collateral. Afterwards

[Kutz's Appeal.]

Kieffer told the witness he had taken the assignment as collateral security for existing indebtedness and for future interest.

Samuel Kauffman says, that in 1873, or 1874, he had conversation with Kieffer when he spoke of Kutz being back with the interest. Witness asked if he did not have security, and he replied that he had collateral security.

The credibility of these witnesses is unassailed and their several statements were emphasized in cross-examination. Their testimony, touching the issue, in the light of the circumstances and admitted facts, convinces us of the truth of the plaintiff's averment, notwithstanding the ingenious argument of the master and less positive opinion of the learned judge of the Common Pleas to the contrary. It seems to us that the only way to avoid such conviction that the legacy was assigned as collateral security for the debt, as would move a chancellor to act, is to exclude a part of the evidence as incompetent. Is there any rule requiring that this shall be done ?

It is proved by one witness that at the time of the execution of the assignment, the parties were present race to face, and that the assignee said it was made for the purpose of security, and if the assignor paid what he owed him then this money was to go back. What could be more clear, explicit and unequivocal ? It brings the case precisely within the rules recognized in McGinity *v.* McGinity, 63 Pa. St. 38. The purpose was security, the indebtedness to be secured was the judgments, and in that was the consideration. If this statement be true it excludes belief that a money consideration was paid by the alarmed creditor, who desired additional security. In a prior conversation with his nephew, Kieffer related the terms of his arrangement with Kutz, substantially the same as proved at the time the assignment was executed. That is pertinent as corroborative testimony, for the evidence is clear that the arrangement was the same at the execution of the writing. Previous conversations may fairly be supposed to have been drawn to a conclusion by the written agreement, and are inadmissible for the purpose of correcting the writing where there is no evidence of what occurred at its execution : Cozens *v.* Stevenson, 5 S. & R. 421. But when there is direct proof of an additional contract at the time of executing the writing, a previous like conversation may be corroborative ; its strength or weakness depending upon circumstances. The subsequent declarations were competent, and when Kieffer spoke of the collateral he had received from Kutz, it is plain that he meant the assignment. We are advised of no rule which excludes such previous or subsequent declarations as were proved, and taking them with the admitted facts, they strongly corroborate the witness who was present when the parties consummated their contract. The bill is sustained by

[Reeser's Appeal.]

the testimony of one witness and strong corroborating circumstances.

The finding of facts by a master, sanctioned by the approval of the court below, will not be set aside except for plain error : Kisor's Appeal, 62 Pa. St. 428. Where the testimony is conflicting, although the merits may appear contrary to his finding, if it has been approved by the court below, as a general rule this court will not reverse. But, where the questions decided grow out of inferences from clearly proved facts, or conclusions derived from reasoning, the report has not the same weight : Sproull's Appeal, 71 Pa. St. 137 ; Phillips' Appeal, 68 Pa. St. 130. Here there is no conflicting testimony ; no impeached witness. We are of opinion that the master erred in his conclusion that the evidence was insufficient to move a court of equity to decree that the legacy was assigned as a collateral security, and that such error was so grave it must be corrected.

Decree reversed, and now it is considered and decreed as follows :

That the defendants, Polly Kieffer, Wellington B. Griesemer and Sarah Griesemer his wife, and George S. Kieffer, within thirty days from this date, assign and transfer all their title, interest and estate in the legacy which was assigned by David S. Kutz to Abraham Kieffer, by writing dated April 29th 1873, unto George S. Kutz, administrator of DeWalt S. Kutz, deceased, in trust for the estate of said deceased.

That the defendants pay the costs.

The record is ordered to be remitted for the enforcement of this decree.